IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY MARSHALL #183459
        Plaintiff        :

        v.        :   CIVIL ACTION NO. JFM-06-3068

RICHARD ROSENBLATT, et al.   :
        Defendants

**MEMORANDUM**

On November 16, 2006, this court received for filing a 42 U.S.C. § 1983 prisoner civil rights complaint from Gregory Marshall ("Plaintiff"), who is confined at the Eastern Correctional Institution in Westover ("ECI"). Plaintiff complains that officials within the Department of Public Safety and Correctional Services ("DPSCS") and Division of Correction ("DOC") and medical personnel at ECI and Roxbury Correctional Institution ("RCI"), have refused to provide him necessary treatment for keratoconus.[1] He invokes the Eighth Amendment and the Americans with Disabilities Act,[2] seeks money damages and injunctive relief mandating treatment, and also requests transfer to the Patuxent Institution ("Patuxent"), where he believes he will receive better care for his condition.[3] On February 26, 2007, a motion to dismiss or, in the alternative, for summary judgment was filed on behalf of defendants Correctional Medical Services, Inc. ("CMS") and K.

---

[1] Keratoconus is a condition in which the cornea becomes cone-shaped, causing distorted vision. Rigid gas-permeable contact lenses ("RPGCL") are used to treat the condition. Plaintiff was referred to specialists by prison health care providers in 1995, at which time his condition was first diagnosed and treatment with RPGCL initiated. *See* Paper No. 1, Exhibits 1-A and 1-B.

[2] The Americans with Disabilities Act ("ADA") is codified at 42 U.S.C. § 12131 *et seq*.

[3] Plaintiff, who is in his 40s, has not established an entitlement to transfer to Patuxent Institution, a DPSCS facility that provides remediation programs and services to youthful eligible prisoners. *See* Md. Code Ann., CS article, §§ 4-201 - 4-202.

Kemp, CMS's regional administrator for RCI.[4]  (Paper No. 41).  On March 30, 2007, a similar dispositive motion was filed on behalf of State defendants[5] Rosenblatt, Green, Riddick and DPSCS.[6] (Paper No. 52).  Plaintiff has opposed the motions filed by defendants.[7]  (Paper Nos. 46 and 54). The motions may be decided without oral hearing.  *See* Local Rule 105.6. (D. Md. 2004).

## Standard of Review

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d

---

[4]  Service of process has not been accepted on behalf of other alleged health care providers, including Prison Health Services, Inc. ("PHS"), N. Greenleaf, Dr. Adams, and K. Hambertson, R.N.. The court notes that PHS was not under contract with the state to provide prison medical services after June 30, 2005, and thus was not responsible for treating plaintiff during the period at issue in this case. PHS is therefore entitled to dismissal from this case.  For reasons set forth herein, service of process must be obtained on the remaining medical defendants.

[5]  Service has not been accepted on behalf of state defendant Bowles. Counsel for the state shall be required to indicate whether service of process will be accepted on behalf of this defendant.

[6]  Both dispositive motions shall be construed as motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[7]  The Clerk shall amend Paper No. 46, to reflect that it is best deemed an opposition to the medical defendants' dispositive motion.  Plaintiff has filed a plethora of nondispositive motions.  The court grants his motions to compel a ruling. (Paper Nos. 50 and 51).  With regard to appointment of counsel (*see* Paper Nos. 12, 17, 26, 31, 32, 33, 46, and 54), the court concludes that plaintiff is able to articulate his claims and present issues for redress.  Therefore, in accordance with the discretion afforded under 28 U.S.C. § 1915(e)(1), plaintiff's requests for appointment of counsel are denied.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). His demands for a jury trial (*see* Paper Nos. 17, 33, and 54) are denied without prejudice, as is his request for reconsideration of an earlier ruling denying emergency injunctive relief. (Paper No. 5).  Plaintiff is not entitled to transfer to the prison of his choosing (requested in Paper Nos. 1, 12, 13, and 16), nor is he entitled to default judgment  (Paper No. 16) or the striking of the State defendants' answer. (Paper No. 40).  His request to dismiss an appeal (Paper No. 39) is denied as moot.  To the extent plaintiff seeks redress for an alleged guard assault and the taking of legal papers (Paper No. 47), he must do so by way of a separately-filed lawsuit.

1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)). There must be "sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

As a inmate sentenced to confinement, plaintiff is entitled to receive reasonable treatment for a serious medical need such as keratoconus. He must, however, prove two essential elements to prevail on a civil rights claim filed pursuant to 42 U.S.C. § 1983. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

In order to state a claim under the Americans with Disabilities Act,[8] plaintiff must show that he is a person with a disability as defined by the statute, that he is otherwise qualified for the benefit he claims to have been denied, and that he was excluded from the benefit due to discrimination

---

[8] *See Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998) (Title II of the ADA applies to state prisons).

based on disability. *See Doe v. University of Md. Medical Systems Corporation*, 50 F.3d 1261, 1265 (4th Cir. 1995); *see also* 42 U.S.C. § 12131 *et seq.*

To meet the definition of "disability" under the ADA, plaintiff must show a physical or mental impairment that substantially limits one or more of his major life activities.[9] *See* 42 U.S.C. § 12102(2). The medical records before the court do not support plaintiff's bald assertion that he is subject to discrimination due to a "disability." In order to prevail under the ADA, plaintiff must be an otherwise qualified individual who is excluded from participation in a program or denied a benefit because of his disability. *See Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). Plaintiff does not discuss how he was excluded from such participation as a result of his eye condition, and accordingly he has failed to show that he has been discriminated against as a person with a disability.

Analysis

Plaintiff claims that on August 9, 2005, RCI medical personnel, including defendants Kemp, Greenleaf, Hambertson and Adams, and prison personnel, including defendant Bowles, told him that he would no longer receive follow-up care and special contact lenses for his keratoconus at the Johns Hopkins School of Medicine's Wilmer Eye Clinic. (Paper No. 1 at 6). Despite this alleged assertion, plaintiff was seen by his regular treating opthalmologist at Hopkins on January 11, 2006. (*Id*. at 7). Plaintiff claims the opthalmologist told him at that time that defendants would not pay for new lenses. It appears that plaintiff saw the opthalmologist again on June 20, 2006.[10] The

---

[9] A plaintiff also may establish disability by showing a record of an impairment or that he is regarded as having an impairment.

[10] Defendants provide no medical records and do not discuss what medical attention was provided for plaintiff's vision problems between August 9, 2005, to date. This information, including medical records from the treating opthalmologist at Hopkins, is essential to resolve the Eighth Amendment claim at issue, namely whether there has been

parties, however, have failed to provide the court any information or exhibits referencing the visits to Hopkins, the diagnoses made, or whether contact lenses were prescribed.

Plaintiff next alleges that on August 29, 2006, defendants Hambertson, Riddick and Green informed him that Wexford Medical Services had approved another visit to the Hopkins opthalmologist. Despite this approval, he complains they delayed the visit so that he could be seen instead by a prison optometrist.[11] (Paper No. 1 at 7). He complains of an inordinate delay between the prescribing of his contact lenses and their delivery. He further claims that the lenses supplied were painful and unusable, yet defendants did not allow him to return to Hopkins to have the fit corrected.

In addition to naming individual state and medical employees, plaintiff has directed his allegation of denial of medical care against against CMS, the contractual health care provider at both ECI and RCI, and DPSCS, a state agency.[12] Plaintiff's allegation aimed at the entity that employs ECI's medical staff and employed RCI medical staff after June 30, 2006 is based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md.,

---

delay or denial of medical care causing harm to plaintiff. Counsel is directed to provide such information in support of future dispositive motions or explain why such information is unavailable.

[11] His complaint concerning new prison policy forbidding the wearing of sunglasses (Paper No. 1 at 8-9) will not be addressed here. Plaintiff may seek redress for this claim by way of a separate lawsuit after first exhausting prison administrative remedies.

[12] Although the exact date of transfer from RCI to ECI is not apparent from the record, it appears the transfer occurred prior to July 14, 2006. This assumption is based on ARP # 965-06 investigation notes attached as an exhibit to Paper No. 52. The court notes that defendants do not contend that plaintiff's action is precluded due to his failure to exhaust administrative remedies.

October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Similarly, plaintiff's claim against DPSCS

must be dismissed because it is immune from suit under the Eleventh Amendment as a state agency, and is not a "person" for purposes of 42 U.S.C. § 1983. *See Will v. Michigan Dep't Of State Police,* 491 U.S. 58, 66 (1989). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The definition of "State" has been expanded out of necessity to include state agencies, such as the state prison system. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam)*; *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)).

Although plaintiff's claim cannot proceed against CMS or DPSCS, the court's inquiry does not end there. As previously noted, none of the defendants has provided the court with any exhibits indicating that plaintiff received treatment for his complaints of eye pain and missing or poorly fitting contact lenses between August 9, 2005 (the first significant date referenced in the complaint) and June, 2006. Records from June, 2006, to date do not include reports from Hopkins from which the court might glean whether plaintiff was denied the treatment he seeks or was harmed from any

delay in treatment.[13] While it is apparent plaintiff's mental illness at times contributes to some delay in treatment, the full record is necessary for proper review of the Eighth Amendment issues now before the court. Furthermore, the role, if any, played by defendant Riddick with regard to the coordination of plaintiff's medical care must be addressed; service of process must be obtained on defendants Adams, Greenleaf, Hambertson, and the "CMS Site Manager at ECI;" and relevant reports and medical records from ECI and Hopkins prepared subsequent to February, 2007, will be needed.

For the aforementioned reasons, Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment, construed as Motions for Summary Judgment, shall be granted in part and otherwise denied. Plaintiff's numerous non-dispositive motions shall be denied. Service of process on various defendants shall be completed before additional dispositive motions may be filed and considered   A separate Order follows.

Date: May 11, 2007                                      /s/
                                                        J. Frederick Motz
                                                        United States District Judge

---

[13]   Defendant Kemp, CMS Regional Manager at RCI, is an administrator who played no role in determining whether plaintiff would receive contact lenses to treat his condition. *See* Paper No. 41, Exhibit A. Kemp is thus entitled to dismissal from this case. Defendant Rosenblatt, Assistant Secretary for Medical Services and Treatment within the DPSCS, is named on the basis that he allegedly made a statement in October, 2006, to the local media that prison health care providers were to hold down medical costs. *See* Paper No. 1 at 6. This statement does not confer liability under § 1983 and the facts of this case and, accordingly, defendant Rosenblatt shall be dismissed. Finally, plaintiff's claim against ECI Warden Green is based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Monell v. New York Dept. of Social Services*, 436 U. S. 658, 691 (1978); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)